IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| QUENTON ALAME, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:13-CV-04280-NKL |
| | ) | |
| NORRED & ASSOCIATES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Norred & Associates, Inc. moves to dismiss the Amended Complaint of Plaintiff Quenton Alame. [Doc. # 14]. For the reasons set forth below, Defendant's motion is DENIED.

**I.  Background**

On approximately November 1, 2013, Plaintiff applied to work for Defendant, a corporate security and investigative firm. The second page of the two-page Employment Application provided by Defendant and completed by Plaintiff included a section titled "APPLICANT STATEMENT," which contained several paragraphs of text followed by a signature line for the applicant. With respect to the possibility of a background check, this section contained the following paragraph:

> It is agreed that the Company may investigate my driving record and any criminal record and may make an investigative consumer report, whereby information is obtained through personal interviews with my neighbors, friends and others with whom I am acquainted. This inquiry includes information as to my character, general reputation, personal characteristics,

1

and mode of living. I understand that I have the right to make a written request within a reasonable period of time to receive additional detailed information about the nature and scope of this investigation. I grant permission for the Company to contact my previous employers, and I authorize those employers to disclose to the Company all records pertinent to my employment with them.

In addition, a third page titled "CONSUMER AUTHORIZATION" was stapled to the back of the employment application. This authorization read:

To Whom It May Concern:

I hereby authorize and request any present or former employer, school, police department, financial institution or other persons having knowledge about me, to furnish bearer with any and all information, including criminal, driving and credit history, in their possession regarding me in connection with an application for employment. I am willing that a photocopy of this authorization be accepted as the original, and I specifically waive any written notice from any present or former employer who may provide information based upon this authorization request. I understand this authorization is to be part of the written employment application that I sign.

I have been given a stand-alone, consumer notification that a report will be requested and used for the purpose of evaluating me for employment, promotion, reassignment or retention as an employee.

The remainder of this page contained several categories of identifying information to be completed by the applicant.

After submitting the Employment Application and Consumer Authorization, Plaintiff received a phone call from an employee of Defendant confirming receipt of the application. At this time, Plaintiff was told that it would be several days before he heard anything regarding the job because Defendant needed to complete a background check. On approximately November 12, 2013, Plaintiff was notified that he would not be considered for employment by Defendant due to information that was revealed through

the background check. The next day, Plaintiff contacted Defendant to request a copy of the report that led to the denial of his employment application. Plaintiff was told that this consumer report would be faxed to him, but he never received a copy of the report.

Plaintiff then initiated this putative class action, claiming that Defendant has regularly and willfully violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, in three separate ways. First, Plaintiff claims that Defendant has taken adverse employment actions, for instance refusing to consider Plaintiff for employment, without first providing affected persons with a copy of the relevant consumer report, a reasonable opportunity to correct inaccuracies, or a summary of their rights under the FCRA. Second, Plaintiff claims that Defendant has failed to provide a clear and conspicuous disclosure, in a separate document that consists solely of the disclosure, that a consumer report may be obtained. Finally, Plaintiff claims that Defendant has obtained consumer reports without proper authorization due to its defective disclosure.

## II. Discussion

### A. Whether the Amended Complaint Plausibly Alleges that the FCRA Applies

Defendant argues that the Amended Complaint should be dismissed for failure to state a claim because Plaintiff has not pled sufficient factual matter to permit the plausible inference that the FCRA applies in this case. The FCRA provisions that are the basis for Plaintiff's claims apply only to "consumer reports" prepared by "consumer reporting agencies," as those terms are defined in the statue. *See Fuges v. Sw. Fin.*

*Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012); *see also* § 1681b(b). Under the FCRA, a "consumer report" is defined as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

§ 1681a(d)(1). A "consumer reporting agency" is, in turn, defined as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Defendant maintains that Plaintiff's Amended Complaint is deficient because it does not allege that Defendant procured a consumer report from a consumer reporting agency when it conducted its background check on Plaintiff.

Although the Amended Complaint never uses the specific phrase "consumer reporting agency," it repeatedly alleges that Defendant relied on a consumer report, as that term is defined under the FCRA. *E.g.*, [Doc. # 11 at 5-6]. Defendant argues that these are conclusory allegations that are not entitled to the presumption of truth. However, the Amended Complaint alleges that Defendant "routinely obtains and uses

information from third parties in consumer reports to conduct background checks," and that one of Defendant's employees specifically referred to the report on Plaintiff as a "consumer report." [Doc. # 11 at 1, 6]. As the materials Defendant relied upon in evaluating Plaintiff are likely to be peculiarly within the knowledge of Defendant, it is difficult to see what further factual allegations Plaintiff could reasonably be expected to make, especially considering Plaintiff alleges he never received a copy of the relevant report.

In addition, the Employment Application and Consumer Authorization, which are attached to and referenced in the Amended Complaint, track the relevant language and requirements of the FCRA. *See* [Doc. # 11-1 at 3-4]. In fact, the Employment Application specifically refers to the preparation of an "investigative consumer report," as that term is defined under the FCRA. *Compare* [Doc. # 11-1 at 3], *with* § 1681a(e). Similarly, the Consumer Authorization required Plaintiff to acknowledge that he had received "a stand-alone, consumer notification that *a report will be requested and used for the purpose of evaluating me for employment.*" [Doc. # 11-1 at 4] (emphasis added). Considered as a whole, this is sufficient to permit the plausible inference that Defendant obtained and relied on a consumer report as part of its background check on Plaintiff.

Furthermore, Plaintiff has attached to his opposition brief several exhibits that suggest Defendant's background check included information about Plaintiff obtained, for a fee, from a third-party. [Docs. # 32; 32-1 at 2-3]. Defendant argues that Plaintiff cannot rely on this extraneous material in opposing its motion to dismiss because it is not contained the Amended Complaint. However, this material is allegedly part of the report

on Plaintiff relied on by Defendant, which is referred to in the Amended Complaint and essential to Plaintiff's claims. Accordingly, the Court may consider these documents without converting Defendant's motion to dismiss to a motion for summary judgment. *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (ruling that, in considering a motion to dismiss, "courts are not strictly limited to the four corners of complaints," and may "consider matters incorporated by reference or integral to the claim, . . . ." (quotation omitted)); *see also McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." (quotation omitted)).

Defendant also suggests, in a footnote, that even if it relied on information provided by a third-party, this does not necessarily implicate the FCRA, as some courts have held that entities serving as mere conduits of publicly available information are not consumer reporting agencies. [Doc. # 15 at 11 n.3]. However, whether or not Defendant actually obtained a consumer report from a consumer reporting agency goes to the merits of this case. This question is best addressed on summary judgment, rather than a premature decision on the merits on a motion to dismiss. While the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), clarified the meaning of Rule 8(a)(2), "*Twombly* and *Iqbal* did not abrogate the notice pleading standard of Rule 8(a)(2)." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010). In the notice pleading framework, "Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a

6

claim." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002), *overruled in part on other grounds by Twombly*, 550 U.S. at 561-63. "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.*

Accordingly, it is sufficient here that Plaintiff has plausibly alleged that Defendant relied on a consumer report in evaluating his fitness for employment. If this is not the case, the matter can readily be disposed of on summary judgment with minimal discovery.

### B. Sufficiency of the Disclosure

Defendant argues that Plaintiff's claims, in so far as they are premised on a violation of the disclosure requirement of the FCRA, fail to state a claim because the Consumer Authorization provided the requisite disclosure. On this issue, the FCRA provides, in relevant part, that:

> a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).

7

Considering the plain language of this statute, it is not apparent that the Consumer Authorization satisfied Defendant's disclosure obligation. The only language on this form that resembles a disclosure is a single sentence by which Plaintiff authorized "any present or former employer, school, police department, financial institution or other persons having knowledge about me, to furnish bearer with any and all information, including criminal, driving and credit history, in their possession regarding me in connection with an application for employment." [Doc. # 11-1 at 4]. The Consumer Authorization never uses the terms "consumer report" or "consumer reporting agency." In fact, the only indication on this form that any entity other than Defendant might be involved in assembling information on Plaintiff is the fact that the form authorizes the "bearer," as opposed to Defendant specifically, to collect this information.

Nonetheless, Defendant argues that this form is sufficient because it disclosed that background information would be gathered. Yet, Defendant argues elsewhere in its briefing that there is a crucial distinction between the gathering of background information and the procurement of a consumer report furnished by a consumer reporting agency. *See* [Docs. ## 15 at10-11; 29 at 3]. Considering that the FCRA is principally concerned with the increased role of consumer reporting agencies in the modern economy, *see* § 1681, as opposed to background checks in general, there is little basis for concluding that a general authorization to collect background information is sufficient to satisfy the obligation to specifically disclose that a consumer report may be obtained.

Furthermore, Defendant effectively takes the position that an individual who signs a written authorization, as required by section 1681b(b)(2)(A)(ii), necessarily received

the disclosure required by section 1681b(b)(2)(A)(i).  *See* [Doc. # 29 at 4-5].  Adopting such a rule would effectively render the disclosure provision superfluous, in direct contravention of a fundamental principle of statutory construction.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).  The Consumer Authorization itself further undermines Defendant's position, as it contains a separate acknowledgment that the signer was given "a stand-alone, consumer notification that a report will be requested."  [Doc. # 11-1 at 4].  It is Defendant's alleged failure to provide the stand-alone notification contemplated by this clause that is the basis for Plaintiff's claims.

For similar reasons, Plaintiff has plausibly alleged that Defendant willfully violated the FCRA.  A defendant's violation of the FCRA is not willful if it resulted from an objectively reasonable interpretation of the statute.  *E.g.*, *Fuges*, 707 F.3d at 248.  As discussed above, the plain text of the FCRA required Defendant to disclose that a consumer report might be obtained and, based on Plaintiff's allegations and exhibits, there is no indication that Defendant ever made such a disclosure.  By Defendant's own admission, obtaining background information, which is all that was disclosed by the Consumer Authorization, is not the same as procuring a consumer report.  The fact that the Consumer Authorization indicated that the signer was to be provided with a separate, stand-alone notification that a report would be requested further belies Defendant's contention that it reasonably believed this form satisfied its disclosure obligation under the FCRA.  Accordingly, Defendant's alleged failure to provide any disclosure that a consumer report might be obtained, in violation of the unambiguous requirements of the FCRA, is sufficient to state a claim for a willful violation of this statute.

9

### III. Conclusion

For the reasons set forth above, Defendant Norred & Associates, Inc.'s motion to dismiss, [Doc. # 14], is DENIED.

/s Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 9, 2014
Jefferson City, Missouri